IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN BEASON, )
        Plaintiff, )
)
v. ) C.A. No. 08-344 Erie
)
HSA K. SMITH, et al., )
        Defendants. )

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Document # 28] be granted.

## II. REPORT

### A. Relevant Procedural History

Plaintiff Shawn Beason, a former inmate at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this *pro se* civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), on December 8, 2008. Named as Defendants are the following current or former employees at FCI-McKean: K. Smith, Health Services Administrator ("Smith"); D. Olson, M.D., staff physician ("Olson"); Robert Piotrowski, physician's assistant ("Piotrowski"); B. Douthit, physician's assistant ("Douthit"); Richard Yovichin, corrections officer ("Yovichin"); Todd Vinelli, corrections officer ("Vinelli"); Deanna Tronetti, unit manager ("Tronetti"); and Douglas Bailey, SIS Lieutenant ("Bailey").

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights, which allegedly caused him to lose his gallbladder. Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment [Document # 28] arguing that Plaintiff has failed to exhaust his administrative remedies with

regard to his claims against all Defendants other than Defendant Piotrowski, and that his claim against Defendant Piotrowski fails to state a claim upon which relief may be granted. Despite having been given ample time to respond to Defendants' motion, Plaintiff has failed to do so. This matter is now ripe for consideration.

### B.  Standards of Review

#### 1.  Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

> Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:
>
>> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>>
>> * * *
>>
>> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2.     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The

3

burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000). Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read

"with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Exhaustion
#### 1. The Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[1] The exhaustion requirement is not a

---

[1] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

5

technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 93-94 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2. The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[2] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural

---

[2] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

6

> default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

Thus, to determine whether Plaintiff has exhausted the administrative remedies required by the Bureau of Prisons' grievance system, an understanding of the administrative process available to federal prisoners is essential. The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### 3. Exhaustion and Procedural Default Applied

Defendants argue that Plaintiff has failed to exhaust his administrative remedies with regard to all of the claims he has brought in this case, other than his Eighth Amendment claim against Defendant Piotrowski. In support of this argument, Defendants have submitted the Declaration of Vanessa Herbin-Smith, a Supervisory Paralegal in the Federal Bureau of Prisons' Northeast Regional Office, who certifies the following, in pertinent part:

> 7. Inmate Beason's administrative remedy records indicate that he has not exhausted his available Administrative Remedies on the following issues: (1) whether Defendant Douthit was deliberately indifferent to his serious medical needs on November 14, 2007; (2) whether Defendants Olson and/or Smith were deliberately indifferent to his serious medical needs on November 16, 2007; (3) whether Defendant Yovichin threatened and harassed him and caused medical injury to Plaintiff while he was recuperating from surgery; (4) whether Defendant Vinelli observed Defendant Yovichin threaten, harass and injure Plaintiff and did nothing to stop it; (5) whether Defendant Tronetti called Plaintiff a trouble-maker when he tried to access the administrative remedy process; and (6) whether Defendant Bailey called Plaintiff a trouble-maker when he investigated a complaint Plaintiff filed against Defendant Yovichin.
>
> 8. Plaintiff's administrative remedy records indicate he fully exhausted his available remedies regarding his November 15, 2007 clinical encounter with Defendant Piotrowski....
>
> 9. Plaintiff's administrative remedy records indicate that he attempted to access the administrative remedy process on December 28, 2007 (Case Number 477997-F1) to raise a staff complaint. However, on January 4, 2008, his Request for Administrative Remedy was rejected without a substantive response, because he did not attach evidence that he attempted to informally resolve the issue before filing the Request for Administrative Remedy. Inmate Beason's Administrative Remedy record does not indicate he tried to refile this particular request.
>
> 10. On January 14, 2008, Plaintiff filed Case Number 479236-R1 with the Bureau of Prisons Northeast Regional Office. In this complaint, he alleged staff misconduct at an outside hospital. On January 15, 2008, his Regional Administrative Remedy Appeal was rejected without a substantive Response. Plaintiff was

8

> advised the issue he raised was not considered sensitive. He was
> advised to address the issues at the institution level before
> seeking relief from the Regional level of review. On February 4,
> 2008, Plaintiff submitted Administrative Remedy Case Number
> 479236-A1 with the Office of General Counsel. As in Case
> Number 479236-R1, he alleged staff misconduct at an outside
> hospital. On February 6, 2008, his Central Office Administrative
> Remedy Appeal was rejected without a substantive response. He
> was advised that his appeal was not sensitive.
>
> 11. On March 10, 2008, he filed a Request for Administrative
> Remedy with the Warden at FCI McKean. He alleged staff
> misconduct (no indication as to which staff member allegedly
> committed the misconduct or where the alleged misconduct took
> place). On March 17, 2008, his Request for Administrative
> Remedy was rejected without a substantive response. He was
> advised his complaint dated back to January 9, 2008, but he did
> not file his complaint until March 10, 2008.
>
> 12. Since March 17, 2008, Plaintiff has not filed a single
> Administrative Remedy Request or Appeal regarding any issue
> raised in the above-captioned civil action. He has not exhausted
> his administrative remedies regarding Defendants Douthit,
> Olson, Smith, Yovichin, Vinelli, Tronetti, or Bailey. Moreover,
> because over one and a half years has passed since the basis of
> any issue involving these defendants are alleged to have
> occurred, Plaintiff is now time-barred from accessing the
> administrative remedy process for any issues related to these
> defendants.

(Declaration of Vanessa Herbin-Smith attached as Exhibit 1 to Document # 29, at ¶¶ 7-12).

Since Plaintiff has failed to respond in to Defendants' motion to dismiss, the foregoing sworn declaration of Ms. Smith is uncontroverted. Thus, it is clear from the record that Plaintiff has failed to exhaust his administrative remedies with regard to all claims in this case, other than his Eighth Amendment claim against Defendant Piotrowski. Moreover, in light of the fact that such claims allegedly took place more than one and one-half years ago, Plaintiff has procedurally defaulted on those claims. Accordingly, all claims other than Plaintiff's Eighth Amendment against Defendant Piotrowski should be dismissed, and all Defendants other than Defendant Piotrowski, should be terminated from this case. Plaintiff's remaining Eighth Amendment claim will now be considered on its merits.

9

**D. Discussion**

Plaintiff's remaining Eighth Amendment claim against Defendant Piotrowski is essentially summarized by Plaintiff as follows:

> [On] November 15, 2007, I went back to Health Services and was seen by PA Piotrowski and informed him of [pain he felt in his lower stomach area] and he said I was lying and stated that I had a stomach virus which was going around and I need to go to the commissary and get some medicine. (Deliberate indifference to my medical needs and improperly diagnosing me).

(Complaint at p. i, ¶ 3). A few days later, Plaintiff was taken to the hospital where he ultimately had to have his gallbladder removed. Plaintiff alleges that he was told by the hospital doctor that "if [he] had not been persistent about [his] problem [he] would have died." (Id.).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Here, Defendants argue that "plaintiff's medical records establish that he received medical attention when he was seen by defendant Piotrowski on November 15, 2007, and that Defendant Piotrowski relied on plaintiff's report and his physical examination to exercise his professional judgment as to what may have been causing plaintiff's symptoms and the steps plaintiff should take." (Document # 29., Defendants' Brief, at p. 20). In particular, the medical records indicate that Plaintiff reported to Defendant Piotrowski that he was experiencing pain "all over" his abdominal area, and described the severity of the pain at a level of three on a ten point scale. (See Declaration of Edgardo T. Ong attached as Exhibit 2 to Document # 29, at ¶ 3e, and p. 44 of the medical records attached to Ong's Declaration). Plaintiff also reported that the pain started three days earlier and seemed to have improved that morning. (Id.). On examination, Plaintiff was found to be in no apparent distress and his blood pressure, pulse, respiratory rate and temperature were all within normal limits. (Id.). His abdomen was found to be mild diffusely and tender in all quadrants, yet he had normal bowel sounds, no masses were detected, and a Murphy test was negative for gallbladder inflammation. (Id.). Based on these findings, Defendant Piotrowski assessed Plaintiff with "viral syndrome; gastroenteritis," and counseled Plaintiff to maintain a "BRAT" diet, rest, and increase his fluid intake. (Id.). He also informed Plaintiff to follow-up with his assigned Mid-Level Practitioner the next day. (Id.).

The foregoing medical record regarding Defendant Piotrowski's examination and treatment of Plaintiff on November 15, 2007, clearly belies Plaintiff's claim that Defendant Piotrowski was deliberately indifferent to Plaintiff's medical needs. The fact that Plaintiff's condition subsequently deteriorated to the point where his gallbladder had to be removed does not change this finding. At most, Plaintiff's claim sounds in medical negligence, which does not rise to the level of an Eighth Amendment violation. See Estelle, 429 U.S. at 106 (mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation). Accordingly, summary judgment should be entered in favor of Defendants with regard to Plaintiff's Eighth Amendment claim against

11

Defendant Piotrowski.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [Document # 28] be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: July 30, 2010

cc: The Honorable Sean J. McLaughlin
United States District Judge